UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN SALVAGNE, et al., : NO: 1:09-CV-00324
:
    Plaintiffs, :
: **OPINION AND ORDER**
        v. :
:
FAIRFIELD FORD, INC., :
:
    Defendant. :

This matter is before the Court on Plaintiffs' Motion for Class Certification (doc. 21), Defendant's Response in Opposition (doc. 21), and Plaintiffs' Reply (doc. 35). The Court held a hearing on Plaintiffs' Motion on December 9, 2009. For the reasons indicated herein, the Court GRANTS Plaintiffs' motion and conditionally certifies the proposed classes.

**I. Background**

Plaintiffs seek to bring this suit on behalf of themselves and three classes, with one sub-class. The class definitions they propose are:

   1. All persons who have signed a retail installment sale contract ("RISC") prepared by Defendant and whose signatures were also obtained by Defendant on a form entitled "Limited Right to Cancel/Purchase" (the "Spot Delivery Agreement") or similar document purporting to give Defendant the ability to revoke the RISC under certain circumstances since May 9, 2008 (the "TILA Class");

      Subclass 1. Persons who belong to the TILA Class who were subsequently contacted by the Defendant and required to sign a new RISC with different terms and conditions since

May 9, 2008.

2. All persons who have signed a RISC prepared by Defendant and whose signatures were also obtained by Defendant on a Spot Delivery Agreement or similar document purporting to give Defendant the ability to revoke the RISC under certain circumstances who were not provided a written adverse action notice by Defendant pursuant to 15 U.S.C. §1691, et seq., and/or Regulation B since May 9, 2007 (the "ECOA Class"); and

3. All persons who have signed a RISC prepared by Defendant and whose signatures were also obtained by Defendant on a Spot Delivery Agreement or similar document purporting to give Defendant the ability to revoke the RISC under certain circumstances since May 9, 2007 (the "Ohio Class") (doc. 21).

To briefly summarize the facts of this case, Plaintiffs signed a RISC when they purchased their car from Ford, which document contained the terms and conditions of the sale and the disclosures required by the Truth in Lending Act ("TILA") (doc. 1). They also signed a separate document at that time entitled "Limited Right to Cancel-Purchase," (the "Spot Delivery Agreement") which, among other things, gave Ford ten days to assign the RISC and, in the event Ford was unable to assign the RISC in those ten days, allowed either party to cancel the sale of the car (Id.). Such cancellation was expressly only permitted if Ford was unable to assign the RISC and for no other reason (Id.).

The Ford detail shop was closed the day Plaintiffs purchased the car, so they returned two days later to have it cleaned and filled with gas, as instructed by Ford (Id.). When Plaintiffs returned, however, they were told that Ford had made

some errors when Plaintiffs purchased the car and Plaintiffs, in order to keep the car, would need to sign new financing paperwork, including a new RISC (Id.). This new RISC contained terms that were more adverse to Plaintiffs and made the sale more expensive (Id.).

Plaintiffs allege that the TILA disclosures contained in the first RISC were not meaningful because they were replaced by those contained in the second RISC, and Ford's procedures attempt to relieve Ford of its legal status of creditor in violation of TILA; that if Ford was actually unable to assign the first RISC, and it could only assign the paper under terms more harsh to Plaintiffs, then Ford was required by the Equal Opportunity Credit Act ("EOCA") to give Plaintiffs notice of an adverse credit action, which Ford did not do; and that Ford's procedures are deceptive, unfair and/or unconscionable in violation of Ohio's Consumer Sales Practices Act ("OCSPA") (Id.). Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move the Court to certify the three classes and one subclass as above.

## II. Discussion

The district court has broad discretion in deciding whether to certify a class. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met. General Tel. Co. of Southwest v. Falcon,

3

457 U.S. 147, 161 (1982). Maintainability as a class action may be determined by the pleadings, although it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met. Id. at 160.

The party seeking to utilize the class action device bears the burden of proof. Senter v. General Motors Corp., 532 F.2d 511, 522 (6th Cir. 1976). In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). Id. In the case at hand, Plaintiffs claim that they have met the requirements under the subcategory of Rule 23(b)(3).

    **A.   Requirements of Federal Rule of Civil Procedure 23(a)**

In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.

### 1. Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1991); see also Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required.").

There is no strict numerical test used to determine whether joinder is impracticable. Senter, 532 F.2d at 523. Instead, the Court must examine the specific facts of each case. General Tel. Co. of Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). In determining numerosity, the Court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." Senter, 532 F.2d at 523. This Court, in Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506 (S.D. Ohio 1985) found that as few as twenty-three class members could satisfy the requisite numerosity. Id. at 508 ("Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes

that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.")(citing Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa. 1968)).

Plaintiffs contend that, based on Defendant's own estimates, the proposed classes could contain approximately 375 members, with the subclass containing approximately 90 members and argue that they have established numerosity (doc. 35). Defendant does not challenge Plaintiffs on the question of numerosity, and the Court finds this requirement met as joinder in this matter would be impracticable.

**2. Rule 23(a)(2): Commonality**

In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." Day, 144 F.R.D. at 333 (quoting Sweet v. General Tire & Rubber Co., 74 F.R.D. 333, 335 (N.D. Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 3.10 at 3-50 (3d ed. 1992). There need be only a single question of law or fact common to all members of the class. Id. "[T]he

mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

In their motion, Plaintiffs contend that the following are questions of fact or law common to the putative class members:

> Whether it was Ford's practice to reject its status of creditor but prepare a RISC and a waiver/revocation form that purports to relieve Ford from its TILA obligations;
>
> whether such practice regarding Ford's retail installment sales contracts and its spot delivery agreements violates TILA;
>
> whether Ford routinely fails to provide notices of adverse credit action and whether such failure violates the ECOA; and
>
> whether Ford's alleged acts and practices are violative of TILA, the ECOA, and the OSCPA and should be permanently enjoined (doc. 21).

At the hearing, additional common issues were presented, including whether Ford is a creditor under TILA, ECOA and the OSCPA; whether the documents used by Ford are permissible under TILA, including whether Ford can permissibly require a buyer to sign the spot delivery agreement; and whether the retail installment sales contract can permissibly be modified by a separate agreement–the spot delivery agreement.

Ford argued in its Response and at the hearing that common questions of fact and/or law do not exist because Plaintiffs' claims rely on specific provisions in their RISC,

7

provisions which do not exist for the purported class members because "many individuals" in the purported class did not sign the same documents as Plaintiffs did (doc. 29). The only claims, Ford argued, that are common or typical are claims relating to Plaintiffs' specific documents and, because there are material differences between Plaintiffs' documents and the documents signed by other members of the putative classes, resolution of Plaintiffs' claims will have no bearing on others' claims (Id.). Consequently, Ford argued, resolution of Plaintiffs' claims will not advance the litigation (Id.).

Plaintiffs argued in reply that it does not matter if the forms are slightly different-what matters instead is Ford's pattern of conduct, and Ford's procedures-the use of a retail installment sales contract and a spot delivery agreement-do not comply with TILA, the ECOA, and the OSCPA (doc. 35). Similarly, Plaintiffs argued that the fact that Ford deals with twelve different lending institutions for its financing is irrelevant-what matters instead is the substance of Ford's procedure, and Ford is the creditor under TILA regardless of which form is used (Id.). In short, Plaintiffs urged the Court to not elevate form over substance.

A note here about the Spot Delivery Agreement and Ford's financing forms is appropriate. The Spot Delivery Agreement reads in pertinent part,

> "You understand that it may take a few days for us to verify
> your credit and to obtain financing directly from the third

party lender whose loan documents we have had you sign (the "Lender") <u>or, if you signed a Retail Installment Sale Contract with us, to assign the Retail Installment Sale Contract to a third party financial institution</u>...If we are unable to obtain financing from the Lender, or to assign the Retail Installment Sale Contract to any one of the financial institutions with whom we regularly do business, within [10 days], you or we may cancel the sale of the Vehicle" (doc. 21)(emphasis added).

The Spot Delivery Agreement seems to create an either/or scenario: either lender-specific forms were executed and Ford would seek to have those approved by the lender or a RISC was executed, and Ford would seek to assign the RISC to any one of several financial institutions. Here, Plaintiffs seek to represent classes of persons who signed RISCs; these classes would not seem to encompass those who signed lender-specific forms instead of a RISC. Therefore, Ford's argument that different forms contain materially different language is not terribly persuasive. That is, Ford referred the Court to lender-specific notes and security agreements to buttress its argument that the forms signed by Plaintiffs are not common to or typical of the putative class because some members of the class signed such notes and security agreements (doc. 29). However, it is not the lender-specific documents and Ford's related procedures that are at issue here. Instead, the issue in this case is Ford's procedures with respect to their RISC and their Spot Delivery Agreement. Even if, however, the classes were to encompass those who signed RISCs and also lender-specific forms, such factual differences among the class members would not defeat the common issues of law that are present.

9

The Court is persuaded that common issues of both law and fact exist among the putative class members. Specifically, the Court finds these questions include the nature of the forms used by Ford; whether those forms are permissible under the laws implicated herein, including whether a retail installment sales contract may permissibly be modified by a separate agreement; whether Ford is a creditor under the laws implicated herein; whether Ford failed to make meaningful TILA disclosures; and whether Ford failed to give notice of an adverse credit action.

Under these circumstances, the Court finds well-taken Plaintiffs' position that they meet the commonality requirement. Sterling, 855 F.2d 1188, 1197.

### 3. Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. Senter, 532 F.2d at 525 n.31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory." Id. at 3-76.

This analysis is necessarily intertwined with the analysis of commonality. Here, proposed class representatives John and Jaime Salvagne allege that Ford failed to comply with the meaningful disclosure requirements of TILA; that Ford failed to provide notification of an adverse credit action as required by the EOCA; and that Ford engaged in unfair and/or deceptive practices in violation of the OSCPA (doc. 21). Plaintiffs assert the same causes of action on their own behalf as they seek to assert on behalf of the proposed classes; indeed, they contend that all members of the proposed classes have identical claims (Id.). Accordingly, Plaintiffs contend they meet the typicality requirement (Id.).

Ford contends that Plaintiffs are not typical of the purported class members because different agreements were signed, and the circumstances and transactions surrounding each purchase were different, including each proposed class member's understanding of the terms and conditions of their agreements and the extent of any injury suffered (doc. 29). Ford relies on Stout v. J.D. Byrider, et al., 228 F.3d 709 (6th Cir. 2000) for support in its position here (Id.). In brief, the Sixth Circuit in Stout found no abuse of discretion for failure to certify a class where the plaintiffs sought to represent a class of used car buyers whose

11

cars were sold with undisclosed damages. Stout, 228 F.3d at 717. The district court had denied class certification in part on the ground that plaintiffs were not typical of the purported class because of the discrepancies among the putative class members regarding the type of car purchased, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and conditions of their purchase agreements and the extent of the injury suffered. Id. One of the key issues for the district court was that some of the putative class members had purchased an extended warranty and some had not. Id.

In short, Ford argues that because the terms and conditions of each sales agreement are different, sometimes different forms are used, and each putative class member's understanding of their particular terms and conditions is different, resolution of the claim of one class member will not resolve the claim of another (doc. 29). Indeed, Ford argued at the hearing that the only class Plaintiffs could conceivably represent would be a class of people who signed retail installment sales contracts and spot delivery agreements with terms and conditions and representations identical to Plaintiffs' RISC and Spot Delivery Agreement and representations.

The Court finds Ford's reliance on <u>Stout</u> misplaced and its conception of the typicality requirement overly narrow. At a minimum, the case at bar does not include any allegations of a damaged vehicle, nor is any kind of warranty implicated, making this case factually dissimilar enough from Stout to preclude the application of the <u>Stout</u> court's abuse-of-discretion analysis to the case at bar. Second, Rule 23's typicality requirement is not an "identicality" requirement. Indeed, the <u>Stout</u> court itself set forth the typicality standard: the inquiry is simply "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class." <u>Stout</u>, 228 F.3d at 717, quoting <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 399 (6th Cir. 1998). Here, while there may be differences in the terms and conditions of each sale, and there may be differences in the wording of some of the forms signed, the Court finds little doubt that the alleged injuries to the Salvagnes are sufficiently related to Ford's financing procedures, conduct that affects all three proposed classes.

The threshold for satisfying the typicality prong is a low one. <u>Weisfeld v. Sun Chem. Corp.</u>, 210 F.R.D. 136, 140 (D.N.J. 2002)(quoting <u>In re Catfish Antitrust Litig.</u>, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993) ("[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the

13

representative parties will be typical of the absent members.")) For these reasons, the Court concludes Plaintiffs have met the typicality prerequisite of Rule 23(a)(3). This leads to the final prerequisite of class certification, adequacy.

### 4. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 525; Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement.

The proposed class representatives aver that their interests are not antagonistic to the proposed classes, nor are there any conflicts of interest (doc. 21). Plaintiffs further aver that their counsel, Steven C. Shane and Raymond G. Ingalsbe,, are experienced in class action litigation, specifically in the consumer credit context, and will fairly and adequately protect the class as

class counsel (Id.). Ford does not contest this prong, and the Court finds it met.

This does not end the Court's analysis, however. Once it is determined that the prerequisites to Rule 23 have been met, the Court must determine if the case is of a type which can be certified under Rule 23(b). Plaintiffs contend their classes can be certified under Rule 23(b)(3).

**B. The Requirements of Federal Rule of Civil Procedure 23(b)(3).**

Rule 23(b)(3) applies if (i) common questions "predominate over any questions affecting only individual members," and (ii) the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Sixth Circuit recently explained the predominance test as follows:

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation...." To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof....'" Further, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones....'" Lastly, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues...." Beattie v. CenturyTel, Inc., 511 F.3d 554, 564 (2007)(citations omitted).

Although the predominance requirement is more difficult

15

to satisfy than commonality under Rule 23(a), the predominance requirement is met if the common question identified "is at the heart of the litigation." Powers v. Hamilton Co. Public Defender Commission, 501 F.3d 592, 619 (6th Cir.2007). Accordingly, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." Id.

Plaintiffs contend that common issues predominate and, for the same reasons discussed above with respect to commonality and typicality, Ford argues that individual issues predominate. Ford takes particular issue with Plaintiffs' allegation that they are entitled to actual damages pursuant to TILA, arguing that because detrimental reliance is a component of actual damages analyses in TILA cases, individual issues predominate over any common issues (doc. 29).

The Court finds that the common issues of law identified above go to the very heart of this matter. The Court respectfully disagrees with Ford's assertion that its liability hinges on what each customer understood at the time of his or her transaction. Instead, Ford's liability will be determined by analyzing its policies and procedures, which affected each putative class member. As to liability, therefore, common issues predominate. As to damages, the Court is not persuaded by Ford's arguments because, if necessary, the Court can bifurcate those issues or have damages decided by a special master or some other method. See, e.g., Olden

16

v. LaFarge Corp., 203 F.R.D. 254, 271 (E.D. Mich. 2001). Consequently, the Court finds the predominance factor met.

As for the superiority of class treatment, the factors pertinent to such a finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend that individual members of the class do not have an overriding interest in individually controlling the prosecution such that individual actions would be better than a class action and that, in any event, Rule 23(b)(3) allows any such individuals to opt out of the class (doc. 21). In addition, Plaintiffs argue that lack of sophistication, resources and representation present barriers to individually-pursued litigation, which will mean that far fewer people will get their day in court if this is not a class action (Id.). Further, Plaintiffs contend that case management reasons support class certification because the common questions of law and fact can and should be resolved for the class as a whole and the only issue, if Ford is found liable, that would be individualized is damages, which is not an onerous process,

17

and certainly a less onerous process than individually litigating these cases would be (Id.). In short, Plaintiffs argued at the hearing that both Ford and the putative classes would get closure on the issues raised by Plaintiffs via a class action in a way that would not happen through individual suits.

Ford argues that class action is not superior because Ford will have to devote considerable time in extensive discovery into each individual deal within the proposed time frame, including the agreement used, the customer's interactions with Ford, what Ford discovered regarding the customer's credit history, and whether Ford knew it would be able to secure financing for that particular customer (doc. 29). This, Ford argues, does not make class action the most efficient method for adjudicating these issues (Id.). In addition, at the hearing Ford argued that it would receive closure by a ruling from this Court on an individual suit just as well as it would through a ruling on a class action.

The Court is not persuaded by Ford's arguments against superiority, not least because Ford's position regarding closure is directly contradictory to its position regarding commonality, typicality and predominance. That is, Ford argues that differences in forms and customer understanding should defeat Plaintiffs' motion for class certification but in the same breath assures the Court that it would receive closure on the issues raised by Plaintiffs if the Court ruled on an individual claim. The Court fails to see how

18

those two positions can be reconciled with each other.  Ford could only receive closure on the issues raised by Plaintiffs in an individual suit if those issues resolved common practices and procedures of Ford.  In any event, the Court finds that efficiency and fairness weigh in favor of class action being superior to individual suits and that both the putative class members and Ford will benefit from the closure class action can uniquely provide.

      Having reviewed this matter, the Court finds Plaintiffs' position well-taken that class certification is appropriate under Rule 23(b)(3).  In the Court's view, the common questions of the nature of the forms used by Ford, whether those forms are permissible under the laws implicated herein, including whether a retail installment sales contract may permissibly be modified by a separate agreement, whether Ford is a creditor under the laws implicated herein, whether Ford failed to make meaningful TILA disclosures, and whether Ford failed to give notice of an adverse credit action predominate over the issues raised by Ford.  The Court sees no economy in allowing some potential 90-375 separate actions to proceed when the resolution of the core questions as to certified classes will likely end this matter.  The Court finds well-taken Plaintiffs' argument that class certification is superior to any other method of resolving the matter as it will promote economy, expediency, and efficiency.  The Court agrees that Ford has raised some potential individual issues, but no such issue

19

predominates over the common ones.

## III. Conclusion

Having heard the positions of the parties at the December 9, 2009 hearing, and having considered their respective arguments expressed in their briefing, the Court finds that this matter should be conditionally certified as a class action. Plaintiffs have met the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b)(3). Of course, the Court's granting of conditional certification should in no way be taken as a decision on the merits of the question of the permissibility under TILA, ECOA or OSCPA of Ford's use of its RISCs and Spot Delivery Agreements.

Accordingly, the Court hereby GRANTS Plaintiffs' Motion for Class Certification (doc. 21), conditionally CERTIFIES this case as a class action pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), and DEFINES the class according to Plaintiffs' definition as stated in Section I herein. The Court further DESIGNATES Plaintiffs John Salvagne and Jamie Salvagne to serve as class representatives, and DESIGNATES Attorneys Steven C. Shane and Raymond G. Ingalsbe to serve as class counsel.

SO ORDERED.

Dated: December 15, 2009         /s/ S. Arthur Spiegel

                                            S. Arthur Spiegel
                                            United States Senior District Judge